- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 2:12-cv-01022 |
| v. | : | |
| | : | |
| MERCURY MARINE, A DIVISION | : | Judge Rudolph T. Randa |
| OF BRUNSWICK CORPORATION, | : | |
| | : | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### PLAINTIFF'S UNOPPOSED MOTION TO ENTER CONSENT DECREE

The United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), respectfully moves the Court to sign the accompanying Order approving the consent decree that was lodged in this matter on October 9, 2012. ECF Doc. 3-1 – 3-5, "Remedial Action Consent Decree for the Plant 2 Operable Unit at the Cedarville Dams (a/k/a Cedar Creek OU1 – Plant 2) Superfund Site." Entry of this consent decree will resolve the claims alleged in the complaint. As required in the consent decree, the United States published notice of the consent decree and provided a 30-day public comment period. CD ¶ 110. No comments were received. Defendants have consented to entry of the decree without further notice. *Id.*

## I. BACKGROUND

On October 9, 2012, the United States filed a complaint against defendant Mercury Marine seeking injunctive relief and payment of past and future costs that the United States has incurred or will incur responding to releases of hazardous substances at the Cedarville Dams (a/k/a Cedar Creek) Superfund Site in Cedarburg, Wisconsin. ECF Doc. 1, Complaint. The

1

cause of action is based on Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§ 9606, 9607. The complaint alleges that Mercury Marine is civilly liable for payment of response costs related to assessment and cleanup of contamination at the Site. The Site encompasses (i) Mercury Marine's former Plant 2 at 2526 St. John Avenue in Cedarburg, Ozaukee County, Wisconsin (Operable Unit 1) and (ii) 4.6 miles of Cedar Creek from just below the Ruck Pond dam until the confluence of Cedar Creek with the Milwaukee River (Operable Unit 2). Mercury Marine owned and operated a manufacturing facility at Plant 2. The complaint alleges that Plant 2 was a source of hazardous substances that contaminated the Site, including polychlorinated byphenyls ("PCBs"). Complaint ¶¶ 5, 9. The Plant 2 building was demolished in 2005. Contamination remains at the Plant 2 property and other areas of the Site.

The consent decree was lodged with the Court simultaneously with the Complaint on October 9, 2012. ECF Doc. 3-1 – 3-5. Paragraph 110 of the decree provides that the United States reserves the right to withdraw or withhold consent to the settlement if comments by the public disclose facts or considerations that indicate that the consent decree is improper, inadequate, or otherwise inappropriate. Notice of the proposed consent decree was published in the *Federal Register*, and the public was provided thirty days to submit comments. 77 Fed. Reg. 62529 (October 15, 2012). The 30-day public comment period ended on November 14, and no comments were received.

## II. TERMS OF THE SETTLEMENT

Under the consent decree, Mercury Marine will perform the approved remedial design for Operable Unit 1 at an estimated cost of approximately $3 million. CD ¶¶ 6, 11-12. Mercury Marine is required to provide financial assurance in the form of a $3 million surety bond to

secure the estimated funding to perform the remedy.  CD ¶¶ 44-45.  Mercury Marine also commits to paying EPA's past and future response costs.  CD ¶¶ 52-53.

Under Section XXI of the consent decree, the United States covenants not to sue or take other civil or administrative action against Mercury Marine pursuant to Sections 106 and 107(a) of CERCLA for the Work, Past Response Costs, and Future Response Costs, as defined in the decree and subject to certain reservations.  CD ¶¶ 82-83.  In particular, the United States reserves its rights with respect to Mercury Marine's liability for additional operable units at the Site, specifically including Operable Unit 2, or the final response action.  CD ¶ 83(j).

Entry of the consent decree will be a final judgment that resolves this case.  CD ¶¶ 115-16.  The consent decree provides that the Court will retain jurisdiction over the matter to enforce the decree and to address any disputes that may arise under it.  CD ¶ 104.

### III.  STANDARD FOR ENTRY

The well-settled standard of review applied to a proposed government settlement under CERCLA is whether the settlement is fair (from both procedural and substantive standpoints), reasonable, and consistent with the statute's purposes.  *United States v. Davis*, 261 F.3d 1, 23-28 (1st Cir. 2001); *United States v. Akzo Coatings of America, Inc.*, 949 F.2d 1409, 1424, 1426 (6th Cir. 1991); *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990); *United States v. Fort James Operating Co.*, 313 F. Supp. 2d 902, 906 (E.D. Wis. 2004).  As the Seventh Circuit has emphasized, in considering a CERCLA settlement proposed by the government "the district court must approve a consent decree if it is reasonable, consistent with CERCLA's goals, and substantively and procedurally fair."  *United States v. George A. Whiting Paper Co.*, 644 F.3d 368, 372 (7th Cir. 2011).  "The trial court in approving a settlement need not inquire into the precise legal rights of the parties nor reach and resolve the merits of the claims or

3

controversy . . . ." *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983) (quoting *Metropolitan Housing Development Corp. v. Village of Arlington Heights*, 616 F.2d 1006, 1014 (7th Cir. 1980). "While the court may either approve or deny the issuance of a consent decree, generally it is not entitled to change the terms of the agreement stipulated to by the parties." *United States v. State of Colorado,* 937 F.2d 505, 509 (10th Cir. 1991).

The judicial deference to CERCLA settlements reached by the parties is "particularly strong" where, as here, that settlement "has been negotiated by the Department of Justice on behalf of a federal administrative agency like EPA which enjoys substantial expertise in the environmental field." *Akzo Coatings*, 949 F.2d at 1436; *see also Whiting Paper*, 644 F.3d at 372 (in considering CERCLA settlements negotiated by the government, "the trial court must defer to the expertise of the agency and to the federal policy encouraging settlement"); *Davis*, 261 F.3d at 21. Indeed, such settlements deserve "a strong presumption of . . . validity." *United States v. Wallace*, 893 F. Supp. 627, 631 (N.D. Tex. 1995); *see also United States v. Kramer*, 19 F. Supp. 2d 273, 285 (D.N.J. 1998). The balance of competing interests affected by a settlement with the federal government "must be left, in the first instance, to the discretion of the Attorney General," *Kelley v. Thomas Solvent Co.*, 717 F. Supp. 507, 515 (W.D. Mich. 1989) (citation omitted), because the Attorney General retains "considerable discretion in controlling government litigation and in determining what is in the public interest." *United States v. Associated Milk Producers, Inc.*, 534 F.2d 113, 117 (8th Cir. 1976). "'Courts considering CERCLA cases have recognized that the usual federal policy favoring settlements is even stronger in the CERCLA context.'" *Fort James*, 313 F. Supp. 2d at 908 (quoting *B.F. Goodrich v. Betkoski*, 99 F.3d 505, 527 (2d Cir. 1996)).

## IV.    JUSTIFICATION FOR THE PROPOSED SETTLEMENT

The consent decree is fair, consistent with the goals of CERCLA, and reasonable.  No public comments have been received on the consent decree.  The decree meets the standard for entry and should be made a final order of the Court.

### A.    The consent decree is procedurally and substantively fair.

The fairness inquiry includes both procedural and substantive fairness.  *See, e.g., Whiting Paper*, 644 F.3d at 372.  The former inquiry addresses whether the negotiation was open and at arms-length.  *See, e.g., United States v. BP Exploration & Oil Co.*, 167 F. Supp. 2d 1045, 1051 (N.D. Ind. 2001).  This requirement is satisfied as long as the consent decree is lodged for public comment and there is no bad faith or collusion in negotiations.  *Id.* at 1051-53.  This settlement is the result of good-faith, arms-length negotiation among the parties.  The United States was represented by attorneys from the Department of Justice who worked closely with EPA's technical and legal staff.  The defendant was represented by experienced outside counsel with support from the company's staff.  The proposed consent decree reflects the parties' careful and informed assessment of the relative merits of each other's positions, taking into account the costs and risks associated with litigating a case such as this one.  No allegations of unlawfulness or collusion have been raised by the public or any party.

The agreement is substantively fair because it ensures that the cleanup of Operable Unit 1 will begin as soon as possible and be performed by a responsible party.  CERCLA "requires that sites contaminated by toxic wastes be cleaned up by or at the expense of the persons responsible for the contamination."  *See, e.g., Employers Ins. of Wausau v. Browner*, 52 F.3d 656, 660 (7th Cir. 1995); *In re CMC Heartland Partners*, 966 F.2d 1143, 1148 (7th Cir. 1992) (in crafting CERCLA, "Congress put decontamination ahead of litigation").  The consent decree achieves

that goal.  In addition, Mercury Marine's role in performing the work is consistent with EPA's determination that Mercury Marine was a primary contributor to the contamination at Operable Unit 1.

**B.  The consent decree is consistent with the statutory goals.**

As stated above, CERCLA aims to make polluters pay for cleanup while facilitating settlement and accelerating remediation where possible.  *See, e.g.*, *OHM Remediation Servs. v. Evans Cooperage Co., Inc.*, 116 F.3d 1574, 1578 (5th Cir. 1997) ("CERCLA's broad, remedial purpose is to facilitate the prompt cleanup of hazardous waste sites and to shift the cost of environmental response from the taxpayers to the parties who benefitted from the wastes that caused the harm.").  Each of these goals is met here.  This settlement will ensure that the responsible party – rather than the public – bears the cost of the cleanup of the Site, while also accelerating the remediation by allowing work to begin at Operable Unit 1 of the Site.  The consent decree meets these statutory goals without requiring protracted litigation.

**C.  The consent decree is reasonable.**

In evaluating reasonableness, courts look first to the agreement's expected effectiveness in cleaning the environment, whether it appropriately compensates the public, and the relative strength of the parties' litigation positions.  *Fort James*, 313 F. Supp. 2d at 910.  Also potentially considered are the availability of alternatives to the consent decree and the extent to which it serves the public interest and statutory purposes.  *Id.*; *BP Exploration*, 167 F. Supp. 2d at 1053.

The proposed settlement adequately resolves, and remains within the scope of, the claim pled in the complaint.  Mercury Marine is fully performing the cleanup of Operable Unit 1, while the Parties reserve their rights with respect to other portions of the Site.  This is appropriate because the United States believes that Mercury Marine is clearly liable under CERCLA and is

6

the primary contributor to contamination at Operable Unit 1. Mercury Marine also will pay EPA's past and future response costs, which are recoverable pursuant to CERCLA Section 107(a). Thus, the consent decree adequately and reasonably compensates the public and holds the defendant accountable for its alleged releases of hazardous substances. The settlement is also reasonable because it resolves the dispute without resort to prolonged litigation, which is a benefit to the parties, the Court, and the public, and allows the remedial action to commence.

## V.  CONCLUSION

The United States respectfully requests that the Court sign the attached Order approving and entering the consent decree, which was lodged with the Court on October 9, 2012 (ECF Doc. 3-1 – 3-5). The consent decree meets the standard for entry. It is fair, adequate, reasonable, in the public interest, and it furthers CERCLA's objectives. It is not the product of illegality or collusion. The United States requests that the proposed consent decree be entered without a hearing or other further proceeding. The defendant has consented to entry of the consent decree without further notice. CD ¶ 110. As specified on page 41 of the consent decree, the "Court's approval and entry of this consent decree shall be signified by entry of a separate order." CD at 41.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:

ROBERT E. MAHER, JR.
Acting Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice

    / s/ Jason T. Barbeau
JASON T. BARBEAU
Trial Attorney, D.C. Bar No. 468200
Environmental Enforcement Section

7

Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
(202) 616-8908 (Telephone)
(202) 616-6584 (Facsimile)
jason.barbeau@usdoj.gov


JAMES L. SANTELLE
United States Attorney

SUSAN M. KNEPEL
Assistant United States Attorney
State Bar # 1016482
530 Federal Courthouse
517 E. Wisconsin Avenue
Milwaukee, WI 53202
Tele. No. 414/297-1723
Fax No. 414/297-4394
susan.knepel@usdoj.gov

Attorneys for the United States of America



OF COUNSEL:

Richard L. Nagle
Assistant Regional Counsel
United States Environmental Protection Agency
Region 5
77 West Jackson Boulevard
Chicago, IL 60604

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2012, copies of the PLAINTIFF'S UNOPPOSED MOTION TO ENTER CONSENT DECREE and proposed ORDER in the above-captioned case were filed and served through the Court's electronic case filing system.


_/s/ Jason T. Barbeau_